Court will now call case number 120041 Melinda Schweiss v. Chase Home Finance, LLC. Are you ready to proceed? I am. Gappell, are you ready? Yes, Your Honor. Then we may proceed. Good morning, Your Honors. Good morning. My name is Ed Joyce. Together with Jennifer Doherty and Joan Mannix, we represent Melinda Schweiss. Mrs. Schweiss is not asking this Court to change any of the elements that were previously described as being required to state a cause of action for the negligent infliction of emotional distress or the intentional infliction of emotional distress. Rather, she is asking the Court to reaffirm what you have already clearly ruled in Corrigan and in Pasquale that, number one, a direct victim of negligent infliction of emotional distress need only, quote, properly allege negligence on the part of the defendant, close test does not apply to the direct victim. Then in Pasquale, the Court said clearly on three different cases, Corrigan v. Mollering eliminated the contemporaneous injury or impact requirement for a direct victim's recovery for emotional distress on the theory of negligence. Again in Pasquale, the Court said in Corrigan, this Court made clear that Rickey's zone of physical danger rule applied only to bystanders. Going on in Pasquale, the Court said Corrigan also extended Rickey's elimination of the impact rule to instances where plaintiffs were direct victims of negligent conduct and suffered emotional distress injury. Finally, in my client, again in Pasquale, Rickey and Corrigan expanded recovery in the area of negligence. Finally, in Pasquale, the changes brought by Rickey and its progeny, Corrigan, eliminated the impact rule in the area of negligence. Implicit in these holdings is that this Court was not imposing any special pleading requirements on a direct victim of a defendant's negligent completion of mental distress. The victim merely had to allege a traditional negligence claim. Here, Mrs. Schweiss alleged that defendants had a duty to use reasonable care in training their employees, agents, and contractors to determine when a property was abandoned and when a mortgagee put ever a mortgagor's home to turn off the utilities. Now, I don't think it's an accident that through all of the manuals, rules and regulations, documents, forms that were generated on Chase's behalf by Safeguard, they never talk about abandonment. They talk about vacancy. Your homes are vacant because you're here. Your home could be vacant because you're on vacation. My home is vacant when I go to work. That vacancy is totally irrelevant to the concept of abandonment, a concept that would give a mortgage company the right to go into court and ask the judge who handled the foreclosure case to give that mortgage company immediate possession because if the homeowner has abandoned the property, they're entitled to immediate possession. That may, what you're discussing sounds a lot like the tort of trespass. It's also been put here as a separate count. But going back to the specific count that we're talking about in terms of negligent infliction of emotional distress, how would you describe the duty of either the company or the individuals to act in a manner of reasonable care in terms of the emotional distress of the homeowner here? Where does that duty arise from? That duty arises from actually four different areas. It arises from the Illinois Constitution, which recognizes, quote, the sanctity of the home, close quote, and, quote, the inherent right for the homeowner to be free from intrusion, close quote. It also stems from the criminal statutes of Illinois, which make it a criminal act where someone with no authority normally enters into a residence that is occupied. Well, again, those are ideas of trespass, which is a separate count that you've pled, but it's not before us, right? My question is about the relationship as we talk about the duty analysis. How do we analyze one person's duty toward the mental status of another person in terms of a negligence duty analysis? I apologize for interrupting. The duty really comes from the conduct that is permitted by the common law, by the foreclosure statute, by the criminal laws, and so forth. That's where the duty comes from. So a company like Chase, acting through safeguard, understands that it has certain rights. It has the right, for example, to make sure the property is secure. Nobody can test that. It has the right to make sure if the property is damaged, they can repair the damage. The question becomes, how do you implement those rights? So in this case, safeguard acting for Chase sent out someone called John Albert, probably an assumed name. Mr. Albert did a drive-by of a home and determined that it was not fully occupied or not fully vacant. That report was so inadequate, the safeguard said, well, please go back and do it again, okay? So then Albert went back, and this report is Exhibit 17, kind of a summary judgment response. And he writes a report, which is called a Work Order Update. And in the report he says, exterior condition of the property, good, no damage visible. Garage is secure. Outbuilding is secure. Please note, property is secure. No exterior broken glass visible. Doors or windows are not boarded. There's no broken doors or windows. In terms of the utilities, the electric is on. And the water is on. And the grass is on. So with this report in hand, which would indicate to most rational human beings that the property is not in need of repair or secure, what happens? Chase following, I'm sorry, safeguard following a Chase protocol sends out Mr. Gonzalez, Mr. Centino, to change the lock. Well, they had to break the lock, remove it, put their own lock in. How is that securing the property? It was already secure. Then they went in there in June in Northbrook, Illinois, to winterize the property, which is another way of saying we're turning off the utilities. So to me, that is a complete breach of the duty that a mortgage company has acting through someone like safeguard to interact and deal with the homeowner. Could I ask an analogy kind of question? Sure. So let's talk about a driver. Let's talk about a typical negligence case. A driver is going down the street maybe really fast, really erratically, and swerves. And people across the street are really shocked by this conduct. Is the driver liable for negligent infliction of emotional distress? Not at all. What's the difference? Well, the difference is these people observed misconduct that impacted on someone else. So there was a speeding driver. They were not in danger of that. They might have been appalled by the speed at which he drove. They weren't in danger there. But if you change your hypothetical a little bit, and if I'm standing on the side of the road, maybe at a bus stop, and I see a Ford F-150 barreling down on me at high speeds, that's a tort. And if I have an emotional reaction and suffer emotional damages, I've got a claim. What's the tort? The negligent infliction of mental distress. You have a duty to operate your car or your truck in a safe and reasonable manner. You didn't. You have a duty not to expose members of the public to danger because they operate your vehicle. You didn't. I'm a person. I'm a direct target of your misconduct. And a natural reaction to what's happening is, I'm scared sick. I think I'm going to die. I think I'm going to be maimed. That person has a traditional tort cause of action against the driver. And if he or she suffers mental distress, I think that court would be called a negligent infliction of mental distress. Now, I don't know why that label is necessary. To me, the court could have said, look, there's a traditional tort here of negligence. One of the elements of damage you suffered was mental distress. But that's not how it all developed. It developed for some reason that there's a separate line of cases dealing with the negligent infliction of mental distress. In some of those cases, there's a special duty relationship between the plaintiff and the defendant. So we have the mental health therapist who has a special duty to the patient, and then because of the conduct of the therapist, the patient experiences emotional distress. Correct? Correct. Are there any other cases where we don't, we recognize the situation you just described where there is not that kind of special duty between the plaintiff and the defendant? Well, in Corrigan, this court did not say that you have to allege tort of negligence where a special duty exists. Special duty cases typically come up where you need the special duty to create, I'm sorry, create the duty to the injured plaintiff. So there was never any indication in Corrigan that anything had to be done other than file a traditional negligence case where one of your elements of damage is mental distress. But Corrigan was essentially a malpractice case, wasn't it? Well, you know, it went up on a certified question. So it was a very limited reason why it was up there. I mean, like defendants point out, well, gee, obviously there was a contact in Corrigan. Well, it wasn't obvious in terms of the decision's outcome. The decision's outcome really dealt with whether or not the Ricky Zona Danger case was going to apply to, I think I flipped into the wrong case. In Corrigan, I know I forgot your question. Well, I asked you. I said it wasn't Corrigan that announced this case, and the plaintiff was the victim of the contact. Right, you're correct. The underlying complaint as it existed in the circuit court was a complaint for malpractice by a psychologist. But it went up to the appellate court and then to the Supreme Court on a certified question. And the only question that was really before the court was whether or not the Ricky Zona Danger rules applied. And the court said no, it did not. But Ricky involved the inflection of ñ the negligence was against the third party. And the question was the other child was within the zone of danger. He could have been injured and had distress from witnessing his brother's injury, as I recall. I agree with you, but I think the way I look at Ricky is it goes up. Ricky, Mr. Ricky and his young brother were descending an escalator. The young brother apparently got his clothing somehow caught in it, the escalator. He's being dragged down. It's obvious to Ricky that he's seriously injured and probably can't breathe. And so the issue that sent back down to the trial court was, was Ricky in the zone of danger? That had not been decided yet. And if he was, is he a bystander or is he a direct victim? He could have been a direct victim under certain circumstances. There I think he's a bystander. If he's a bystander and he's in that zone of danger, did he suffer some physical injury or illness as a result of it? Again, another topic that's a little bit wide open here. People are trying to interpret the Ricky case as saying that the bystander has to suffer some physical impact or injury as a result of being in the zone of danger and seeing what happened. The court's opinion says it suffers a physical injury or an illness. And I don't know that an illness requires physical impact. So in any event. Well, let's just talk a little further about Corrigan, Mr. Joyce. It seems like the concern in Corrigan was whether the plaintiff in that case had to allege and prove physical manifestations of the emotional distress in order to recover. Absolutely correct. And the court held she did not. But that's a completely different question, isn't it, from whether the plaintiff had to allege a contemporaneous impact or injury? The court in Corrigan simply didn't address that. And it would seem like, before you answer, because you mentioned Pasquale a number of times, I'm having difficulty with Pasquale, and I'll quote it. Corrigan eliminated, this is from Pasquale, the contemporaneous injury or impact requirement for a direct victim's recovery for emotional distress and a theory of negligence. I personally do not see that in Corrigan. Well, I'll tell you how I got there. Okay. This court said, after looking at all the various facts the parties raised, all Mrs. Corrigan had to do was to allege a simple negligence claim against the defendant. I think implicit in that is no special cleaning requirements, meaning no requirement to allege a contact contemporaneously with the negligence and no requirement to establish an after-the-fact situation where she suffered some physical injury or mental illness. Now, you know, we're all using perfect hindsight here, and this court has been criticized both by the federal court and by a number of tele courts for not saying things differently. But if you take a look at what the court was confronted with in Corrigan, what the court said, it said all you have to do is plead negligence. What kind of negligence? I think we need to be more precise here. We've talked about medical malpractice. We've talked about the car situation. Aren't we talking about a specific cause of action? Negligent infliction of emotional distress. The quote from Corrigan is, quote, properly allege negligence on the part of the defendant, close quote. It did not say what type of negligence you have to allege, but significantly no special elements have to be alleged. You just say negligence, period. Negligence. Traditional negligence. And I divine from that statement, well, if all I have to do is allege negligence, I'm not required to allege an impact, I'm not required to allege a post-injury illness or other problem. And if I wasn't sure, of course I would be sure, when the court dealt with post-quality. And again, you're being criticized by the hindsighters for, what, not saying in Corrigan what you said in post-quality. Now, when post-quality is said on three different occasions, very clearly, that you regarded your decision in Corrigan as removing the requirement of alleging an impact. Now, would you agree that's dicta? Even if we disagree whether it's right or not, do you agree it's dicta? I would, but what I'm a little bit confused about is what kind of dicta it is. Because in, I think, Cates versus Cates, there was a discussion of different types of dicta. And this court looked at different types of dicta through the ages and what it meant. And at the end, I think what you said was, essentially, I'm paraphrasing, but, dicta from a court of last resort, unless there's been some subsequent opinion changing what was said, is a rule of law. So, I think we can solve this entire problem. Assuming this court meant what it said in Corrigan, like it originally didn't, and assuming they meant post-quality as to what it said, in this case, you can clearly state that someone like Mrs. Schweiss, who has suffered a negligence injury where one of her damages is mental distress, that she needn't allege an impact, and the zone of danger rule of Ricky doesn't apply. End of story. I think my time is up. Thank you. You have time, and we're both. Good morning. Are you pleased to court, counsel? My name is Gerard Fosco. I'm pleased to be representing Safeguard Properties, Inc., Todd Gonzalez, and Edilfonso Centino, counsel for the co-acolyte, counsel for Chase Financial, and I have agreed to split our oral argument time 10 minutes each.  but I'm going to address the panel. I'm going to address the negligent infliction of emotional distress issue and the waiver issue. It seems like we've focused on negligent infliction of emotional distress, so I may take some additional time. By agreement of counsel for Chase, I will reserve some time for him also. I think that it's important that we consider the context in which this negligent infliction of emotional distress claim comes before this court and the issue comes before this court, and it is, to use the terminology from Clark, a freestanding claim for negligent infliction of emotional distress. That's how it's been pled, that's how it's been argued in the trial court, that's how it's been argued in the appellate court, and that's how it's argued here, and Mr. Joyce argued it that way during his presentation. I would first also point out that we're dealing here with a pleading requirement. Is it required that a plaintiff alleging the tort or the cause of action for negligent infliction of emotional distress must they plead a contemporaneous physical impact? And I would contend that we're a fact-pleading state. We're not a notice-pleading state, and under our rules of pleading, all essential elements of a cause of action must be pled. The purpose of a contemporary physical impact prerequisite would be eliminated if that was not required to be pled. If we were to compare this to the zone of danger situation, would it have been sufficient if the plaintiff and Ricky had pled, I was riding in the elevator with my brother, the defendant had a duty to properly maintain the escalator, he breached that duty by not maintaining it, and therefore I suffered emotional distress. That would not give the defendant notice of the claim that he was called upon to defend. And similarly in this situation, the contemporaneous physical impact requirement, like the requirements in Ricky of the plaintiff being subjected to a fear of physical harm and a likelihood of a physical impact and a physical impact to the direct victim, those must be pled. Similarly, the contemporaneous physical impact requirement must be pled to serve the purpose that it intends. If we look historically at these requirements, both this court and both Ricky and Corgan have recognized that the contemporaneous physical impact requirement applied to all negligent infliction of emotional distress claims pre-Ricky. And what the Ricky court did was acknowledge or recognize the fact that under the context of those facts, the physical impact requirement was unjust. That that plaintiff, we need to create something different for that plaintiff because under that scenario, severe emotional distress was likely to occur. So they eliminated the physical impact requirement, but they still recognized, hey, we still need to have some type of assurance that this claim is going to be valid. And that's the whole reason why they created the zone of danger requirement. They didn't just say we are going to eliminate the physical impact requirement for bystanders. They said, no, we have to substitute something to have this assurance that we're going to be dealing with valid claims for emotional distress. So the contemporaneous physical impact requirement is and should be the law for direct victim cases and actions alleging negligent infliction of emotional distress. The zone of danger requirement is no doubt still the law for bystanders. And the Rickey Court recognized that there was this continuing need for a mechanism to ensure validity that that claims be brought that are valid and not frivolous. The contemporaneous physical impact requirement serves additional purposes. It serves the purpose of minimizing the likelihood of frivolous claims. It also serves the purpose of minimizing the possibility of bringing cases where there is not reasonable foreseeability on the part of the defendant that emotional distress and damage are likely to result. And it also eliminates cases, or at least minimizes cases where the only injury that the plaintiff sustained was merely becoming upset or having been offended by what took place. And I think when Mr. Joyce spoke about the example of the car that almost hits you and saying that this is going to bring about a cause of action for emotional distress, we're talking about opening the floodgates to litigation regarding merely being offended or placed in some level of fear. That, I don't believe, is the purpose of having a claim for negligent infliction of emotional distress. Now, this Court in Clark used the terminology special restriction when talking about the zone of danger requirement. And as I said before, it says we need to create these special restrictions when we're dealing with freestanding claims for negligent infliction of emotional distress to serve the purposes I've spoken of. And it stands to reason that we can't have a situation where a zone of danger plaintiff has a special restriction, but a direct victim there's no special restriction. That just wouldn't make any sense. If we were to eliminate... This Court would have held that the contemporaneous physical impact requirement was eliminated, it would result in some absurdity in the law. So why would a plaintiff ever bring a claim for intentional infliction of emotional distress and incur a burden of having to show that the conduct of the defendant was extreme and outrageous when they could just show mere negligence? Why would a plaintiff ever want to argue or have to prove or incur the burden of proving the knowledge of the likelihood of emotional distress or intent to cause emotional distress when all they had to prove was that it was foreseeable that emotional distress might result? So the contemporaneous physical impact requirement keeps in place these separators of intentional infliction of emotional distress and negligent infliction. Eliminating the contemporaneous physical impact requirement would also create some other anomalies. And I talked about the fact that if we eliminate that requirement, the question then arises, is any level of emotional distress actionable? And if the answer to that question, as Mr. Joyce suggests, is yes, then you ask, well, why does the bystander then have to show a reasonable fear for his or her safety? Why does a bystander have to show that they were subjected to a high risk of a physical impact? I mean, the fact that the Rikki Court in enacting the zone of danger standard included in that standard that the bystander victim has to be subjected to a high risk of physical impact indicates that they wanted to maintain the physical impact requirement for the direct victims. So from that standpoint, I would contend that we don't want to open the floodgates to litigation with respect to merely being offended or merely being upset at someone's actions. With respect to if the court is inclined to get to the issue of intentional infliction of emotional distress, we've argued that that's been waived by the plaintiff not requesting reconsideration of that issue and by the fact that in their motion for reconsideration, it was more primarily based upon confusion that apparently exists in the judiciary and among litigants on the negligent infliction of emotional distress claim and there's really no reason to address the intentional infliction of emotional distress claim. At this point, I'll yield to Counselor Chase. Thank you. Thank you. Good morning, Your Honors. Edward Lesniak representing J.P. Morgan Chase Bank, M.A. which is the successor by merger to Chase Home Finance, LLC which is the named defendant in this case. This case also has a couple of other components. One is the intentional infliction of emotional distress and I'm going to address that briefly. Our position is that that issue has been waived and essentially decided. The reason is that one of the key elements of that claim is an intent element. It has to be either an intention to inflict emotional distress or knowledge that what your actions will do will result in a high probability of the plaintiff being emotionally distressed. That issue was squarely dealt with by the appellate court although plaintiff argues that the appellate court never discussed it. It's clearly referred to in paragraphs 26 to 32 of the appellate court decision. The appellate court identifies the issue specifically that the plaintiff has raised an issue as to whether Gonzalez and Centino's conduct had a high probability of causing emotional distress. The court sets out the arguments under the foreclosure law that are made by the plaintiff. The court then says those arguments are incorrect and spends three paragraphs identifying why those arguments are incorrect and then goes on to say even if we were to agree with you on that aspect, you lose on the extreme and outrageous conduct element. So the appellate court affirmed the circuit court that no reasonable juror could find that Centino and Gonzalez intended to commit to inflict emotional distress and then went on to say we have another basis for that ruling. The applicable rule here, as you all know, is rule 341H7. All arguments not made in the brief are waived. They're not to be raised in the reply. They're not to be raised in oral argument. They're not to be raised on motions for reconsideration. So our position here is that by not addressing the intent element of the intentional infliction of emotional distress, the plaintiff has waived that argument and as a result that element can never be proved on summary judgment and summary judgment should be affirmed. There's also another point I wanted to raise in connection with foreclosure law that just permeates this entire process. The plaintiff makes the argument throughout all the briefing that Centino and Gonzalez were there to take possession. They were not there to take possession. There's nothing in the record to support that they were there to take possession. They were there solely to enforce the rights under the mortgage contract and under the foreclosure judgment that allowed the lender to inspect the property and to make repairs. That's why they were there. It was not to take possession of the property. The last point I wanted to make is one that wasn't dealt with by the appellate court in the sense that it made a ruling. It just said we don't need to go there and that's the agency argument. You've heard Mr. Joyce say Chase and Safeguard did this. Look at the history. Chase hired Safeguard as an independent contractor. Safeguard hired A1 Builders as an independent contractor to perform the task of inspecting property. A1 Builders hired Centino and Gonzalez Chase is three steps removed from the actions that occurred on July 22, 2010. I don't want to take up any more of your time. I'll tell you exactly what you need to know to decide this issue. It's very simple. On July 22, 2010, Mr. Gonzalez and Mr. Centino were outside of Ms. Joyce's property trying to decide whether to go in. What do we know about that? They were hired by A1. They were not hired by Chase. They were paid by A1. They were not paid by Chase. They were trained by A1. They were not trained by Chase. And as they stood there after they had perfected all of the training that A1 had given them and they checked the doors, they looked in the windows, they knocked on the doors, they talked to neighbors, they checked the water, they checked the gas meter, and as they wanted to make their conclusion that the property was vacant and they could go in, they wanted somebody to tell them to do it. They didn't call Chase. They called A1. My point is that Chase had no control over what Mr. Gonzalez and Centino did on that day. There is no vicarious liability as to JPMorgan Chase Bank. And no matter how you rule on the other aspects, JPMorgan Chase Bank should be dismissed from this proceeding on that basis alone. If you have any questions, I'll take them otherwise. I thank you very much. The defendants ask you to affirm the appellate court decision and also to dismiss JPMorgan Chase Bank with respect to the vicarious liability claim. Thank you. Thank you. To please the Court, I have a few comments regarding where the points are. In Corrigan, before the Court reached its decision about whether, at least inferentially, an impact was required, it took a look at the history of why impacts were required. And this clause of action started at a point in time when medical evidence, especially of a psychological nature, was woefully inadequate. Courts were in an area where they didn't really understand what was happening and they were endeavoring to protect themselves from what could be a trumped-up charge. As Corrigan pointed out, things have changed radically. At this point in time, any plaintiff or defendant can easily find access to competent medical professionals who can, without a doubt, determine whether the plaintiffs who allege emotional injury are faking it. Sure, they'll be a faker who will make it, but that's hardly a reason for taking away a clause of action. But now, because we have the ability to get competent medical evidence, we needn't indulge in the sort of silliness of a contact. As Corrigan pointed out, the case law has gone so far to preserve a plaintiff's claim in the contact era that if a speck of dust got in your eye as a result of what the defendant said, you've got a contact. Courts were striving to make sure that an injured plaintiff with a legitimate claim didn't lose it. Corrigan did away with all that. We don't need to go through that nonsense. We don't have to come up with a patent. All you have to do here is establish that there is a legitimate negligence claim that could be brought. Now, in terms of the floodgates, we always hear about floodgates, and I don't see where the floodgates are going to be relevant here. Especially, let's talk about the Ford 150 example we talked about. If a Ford 150 is barreling down the street in a reckless manner, and I observe it, and I'm appalled, I've got no cause of action. Even if I have a visceral reaction where I get ill, I have no cause of action. If that Ford 150 is coming at me, I've got a cause of action. Why? Is there a different duty? Can you break it down into the elements of negligence? What's the distinction? The distinction is that I am within the class of people that the law says is entitled to be protected from a reckless driver. Drivers, by statute and by common law, are required to keep control of their vehicle and drive it in a non-reckless manner. If you're driving a vehicle in a reckless manner at me, I'm in that class meant to be protected, and if my reaction is a legitimate emotional distress issue, I've got a cause of action. But that's really not an issue here. Nobody's challenged whether or not Mrs. Swythe has suffered mental illness. No one's challenged that. We're at a pleading stage. Do you dismiss the negligence count in order to add the NIED claim? Is that correct? No, we didn't. We amended at trial our pleading to allege a negligent infliction of mental distress. And the court let us amend the pleading and then said, yes, but you didn't allege in that pleading a contemporaneous contact. You said, yes, we didn't and we can't, and the court then dismissed it on pleading grounds. My question would be, if you were able to prove negligence against the defendant, straight negligence, wouldn't Mrs. Swythe be able to recover for her emotional distress? I agree completely. But I don't see that many courts have gone there. I mean, to me, if I allege a traditional negligence claim in one of my injuries, one of my injuries that is anticipated and not far-fetched is mental illness, yeah, I should be able to get that. To me, it's just a negligence case. I didn't think this was a negligence case. This is a negligence case where her principal damage is psychological. And because the law has grown up with this notion of negligent infliction of mental distress, that's the label that's put on it. If the law had grown up differently, we might not need that. But you don't have to have that in order to recover for emotional distress, right? I'm sorry? You don't have to have an NIED claim in order to recover for emotional distress. I don't think you should have to have one, but any plaintiff who didn't allege it would have to call us in our practice and tell them why. I mean, that's how it's grown up. But that's the cause of action that's done. I'd like to just talk about one thing. Could she recover her emotional distress under the trespass claim? The trespass damages almost don't warrant filing the case. I mean, the historical damages for trespass are diminished. I guess I'm thinking, I mean, when you talk about a general negligence case. Right. Okay, so again, the car example. If somebody's driving and they're driving erratically and someone's injured, then not only can they recover for physical damages from the injury, but also emotional damages. Correct. So I think some of the cases talk about it being parasitic damages to what we'd call a traditional negligence case. Right, I don't like the label, but they do say that. Okay, but that's not what we're talking about here. We're not saying these are the damages piece toward a traditional kind of case like the car accident. That's not what this is, right? This is freestanding. It has nothing to do with any other kind of cause of action, any other kind of conduct. Traditional tort for violating the duties that we've alleged in our complaint that are owed to her, and the damages just happen to be damages of negligence. So are you saying negligent hiring is the tort? No. And that these are emotional... Negligent training. So you're saying this is really the tort of negligent training and these are the parasitic damages to that? I think I could go with that. I haven't thought it through, but I think I could. Could I spend one minute on agency? You know, it just amazes me that any defendant would have a testament for it to stand up here and say to you there's no agency issue. The uncontested facts are that every single thing that Safeguard did, A1 did, Gonzales did, Santino did, was pre-approved by Chase in a manual. In fact, Santino and Gonzales were pretty simple working folks and said it real well. If we didn't follow Chase's rules, we wouldn't get paid. So every single thing that was done was dictated and pre-approved by Chase. When people went out to look at the property, pre-approved by Chase. None of the pre-approved dictated by Chase. If this happens, send someone out. Chase was in total control. They didn't have a Chase person out there. They didn't have a Safeguard person out there. They had someone Safeguard selected and trained according to Chase's manual out there. So the notion that Chase was not in charge, Chase was in total charge, complete charge. Then the issue of what happened. You know, you'd never have a case for your neighbor. But we know that Gonzales and Santino were concerned enough about whether they should enter Mrs. Schweizer's house that they called their boss. Here are the facts. What should we do? I assume they told them the true facts. The true facts being from Santino, Gonzales crossed the street and asked a neighbor, does someone live there? And she said yes. And Gonzales asked the neighbor, is that her car? And she said yes. Of course, Gonzales confessed that, but that's a material fact. So if they call up A1 and say, what the devil should we do? The lady across the street says the owner's there, it's her car. He doesn't just say, go do what I told you to do. He hangs up, I'll call you back. So he called someone. I assume he didn't call his wife. I assume he called somebody up the food chain. He then called back and said carry out the work order. Even though you don't know and you're not sure the house is abandoned, break in, turn off utilities. Thank you. Case number 120041, Melinda Schweizer versus Chase Home Finance LLC et al. Will be taken under advisement as agenda number 10. Mr. Joyce, Mr. Foskell, Mr. Osniak, thank you for your arguments this morning. You're excused at this time.